**Linda A. MURRAY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2602.

Court of Appeals of Alaska.

Aug. 18, 1989.

Rehearing Denied Sept. 6, 1989.

Susan Downie, Asst. Public Defender, Fairbanks, and John Salemi, Acting Public Defender, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Linda A. Murray was found guilty by a jury of misconduct involving a controlled substance in the third degree (delivery of cocaine). On appeal, Murray contends that there was insufficient evidence to support her indictment and conviction. Although we find that sufficient evidence was presented at trial, we conclude that the evidence presented to the grand jury was insufficient. Accordingly, we reverse.

In August 1987, Milne VanSickle agreed to work as an undercover agent for the Office of Special Investigations (OSI) at Eielson Air Force Base. VanSickle worked in the transportation section at the base. He became acquainted with Alice Simmons, who worked in the nearby maintenance control section. VanSickle approached Simmons because a friend told him that he had obtained drugs from her. On September 11, 1987, Simmons told VanSickle that she could obtain a gram of cocaine for $125. They agreed to meet at Simmons' apartment later that day.

At about 5:30 p.m., VanSickle met Simmons in the parking lot of her apartment building and gave her the $125. He said he would wait for her there. Simmons drove to a house on Lawrence Road. She remained in the house for about forty minutes and then drove back to her apartment. She and VanSickle went inside the apartment, where Simmons produced a paper slip containing cocaine. She removed some cocaine for herself and gave the remainder to VanSickle. The slip contained .47 grams of cocaine.

On October 1, 1987, VanSickle again contacted Simmons and arranged to buy another gram of cocaine. He met Simmons at her apartment and gave her the buy money. While VanSickle waited, Simmons drove to the house on Lawrence Road. She

stayed in the house for about fifteen minutes and returned to VanSickle. Simmons gave VanSickle a paper slip that contained .39 grams of cocaine.

OSI and police officers maintained surveillance over Simmons during both of the sales to VanSickle. Based on the events of October 1, the police obtained a warrant to search the house on Lawrence Road, which was occupied by Linda Murray. On October 7, police officers executed the warrant and interviewed Murray, who was at home when the search was conducted.

The grand jury subsequently returned a two-count indictment. Count I charged Simmons with delivery of cocaine to VanSickle on September 11, 1987. Count II charged Simmons and Murray with delivery of cocaine to VanSickle on October 1, 1987. The cases against Simmons and Murray were later severed. Simmons pled no contest to the October 1 sale and agreed to testify against Murray in return for dismissal of the charge relating to the September 11 sale.

Prior to trial, Murray moved to dismiss her indictment, alleging insufficient evidence to support the conclusion that she had participated as an accomplice to Simmons' sale of cocaine to VanSickle. The trial court denied Murray's motion. At trial, Simmons testified as a witness against Murray. The jury found Murray guilty as charged.

■ On appeal, Murray first argues that the trial court erred in denying her motion to dismiss the indictment based on insufficient evidence. Criminal Rule 6(q) states, in relevant part: "The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." *See also Lupro v. State*, 603 P.2d 468, 473 (Alaska 1979). There is a presumption that the grand jury acted on sufficient evidence. *Merrill v. State*, 423 P.2d 686, 695 n. 37 (Alaska 1967). In determining the sufficiency of the evidence before the grand jury, we must view the evidence in the light most favorable to the state. *Mudge v. State*, 760 P.2d 1046, 1049 (Alaska App.1988).

Since Murray was charged with delivering cocaine to VanSickle rather than to Simmons, it is clear that the grand jury held Murray accountable as an accomplice, rather than as a principal. Murray claims that there was insufficient evidence to indict her as an accomplice.

[I]n order for a supplier of cocaine to be criminally liable as an accomplice for the subsequent sale of cocaine by the person supplied, the state only need[s] to establish that the supplier was aware of the buyer's plan to resell cocaine and acted with the intent to promote the buyer's plan.

*Mudge*, 760 P.2d at 1048 (citing *Shindle v. State*, 731 P.2d 582, 586 (Alaska App. 1987)). These requirements are based on AS 11.16.110, which governs accomplice liability. Murray argues that the grand jury was presented with no evidence from which to infer her awareness of Simmons' plan to resell the cocaine or her intent to promote this plan.

In advancing this argument, Murray points out that the evidence before the grand jury established that Simmons negotiated the transaction with VanSickle, set the price, took his money, acquired the cocaine, and delivered it to him. Moreover, the quantity of cocaine involved in the case was small enough to be entirely consistent with personal use. Simmons' purchase of such a small quantity could not in itself have put Murray on notice of Simmons' plan to resell it to another person.

The only evidence the state offered to the grand jury even arguably indicating Murray's knowledge of Simmons' plan to resell the cocaine was presented in the testimony of Alaska State Trooper Franco D'Angelo. D'Angelo monitored the conversation between VanSickle and Simmons during the October 1 sale. According to D'Angelo's grand jury testimony, when consummating the October 1 sale, Simmons told VanSickle that Murray had offered her some cocaine to consume at Murray's apartment, but that she had declined the offer, saying that she was trying to avoid getting "hooked." The state argues that, viewed in its most favorable light, Sim-

mons' refusal of Murray's offer of free cocaine is evidence that Murray must have known Simmons was going to resell the cocaine that she was buying.

We disagree. Simmons' refusal of Murray's offer of cocaine for Simmons' immediate use at Murray's apartment does not support a reasonable inference that Murray knew Simmons was planning to redistribute the cocaine she was purchasing. Even if it did, Murray's mere awareness of Simmons' intent to resell the cocaine would not support the further inference that Murray acted with intent to promote Simmons' plan. This marginal piece of ambiguous evidence would not in itself have warranted Murray's conviction as an accomplice to Simmons' sale. Alaska R.Crim.P. 6(q). Because the state did not alternatively seek to charge Murray as a principal for her delivery of cocaine directly to Simmons, the evidence before the grand jury was insufficient to support Murray's indictment.[1] We must conclude that the trial court erred in denying Murray's motion to dismiss the indictment.

Murray's second claim on appeal is that the state failed to produce sufficient evidence at trial to support her conviction. Although reversal of Murray's conviction is necessary in light of our conclusion that insufficient evidence was presented to the grand jury, we must nevertheless consider Murray's second claim, because, if the state failed to produce sufficient evidence at trial, Murray would be entitled to an acquittal, and a retrial would be barred.

In reviewing the sufficiency of the evidence at trial, we must consider the totality of the evidence and the inferences arising therefrom, in the light most favorable to the prosecution. The evidence, thus viewed, must be deemed sufficient if a reasonable juror could conclude that the accused's guilt was established beyond a reasonable doubt. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

The state argues that the testimony of Simmons and VanSickle at trial provides ample evidence to sustain the conviction. First, Simmons testified as to the September 11 sale. She stated that, after agreeing to obtain a gram of cocaine for VanSickle, she telephoned Murray:

A: I called her, on the phone.

Q: And when you talked to her on the phone, did you indicate to her who the cocaine was for?

A: I didn't tell her a name, I just told her that I needed some coke for somebody. This guy wanted some coke.

Q: So, you related to her that the coke was not for you.

---

1. During the grand jury proceedings, the prosecuting attorney asked Trooper D'Angelo for his opinion as to whether Murray was acting as an accomplice:

   Q: Trooper D'Angelo, this is not necessarily a legal opinion, but it's a question I'd like to ask you based on your experience as far as accomplices go, accomplice liability, is it typical in your line of work to charge people as accomplices wherever they may fit along the distribution chain as long as it's the same transaction? In other words, the sources, as far as you're able to track them upward up the scale and

   . . . .

   A: Yes, I . . . .

   Q: . . . the actual one that makes the distribution.

   A: I cannot be selective and say that this person was only doing it as a favor. If this person is involved in the chain of supplying drugs to another individual, I cannot overlook that.

   Q: And as far as Linda Murray's furnishing of the drugs to Alice Simmons for transmittal to or delivery to VanSickle, would that, in your opinion, be someone who is aiding and abetting?

   A: Yes.

   Q: Miss Simmons to do that by her . . . .

   A: Yes.

   Q: . . . participation and furnishing that drug?

   A: This was one of the locations where Alice Simmons would go to obtain the drugs and if—if either she was not willing to do that or Alice Simmons—or Linda Murray was not willing to sell to her, if the chain would be broken somewhere in between there.

   To the extent that D'Angelo purported to express a factual opinion, as opposed to a legal conclusion, his opinion appears to have been wholly speculative and would not have been admissible at trial. The state properly does not argue that D'Angelo's opinion concerning Murray's status as an accomplice should be considered in determining the sufficiency of the evidence before the grand jury.

A: More or less, yes.

Simmons testified that Murray agreed to try to get her some cocaine. Simmons said she told Murray that she would go over to Murray's house to pick up cocaine after the person who wanted it got to Simmons' house. When Simmons arrived at Murray's house, the two women used some of the cocaine already packaged for VanSickle. Simmons said she told Murray that she did not know if he knows how much is—there's supposed to be or not."

Simmons testified that sometime after September 11, she asked Murray whether VanSickle could start buying directly from Murray.

Q: And what was Linda's response or reaction to having VanSickle deal directly with her, instead of through you?

A: She said, no way. No.

Q: Did she indicate that she didn't want to meet him?

A: Yes.

. . . .

Q: Do you know why she didn't want to meet him?

A: Do I know why—yes.

Q: Why?

A: She didn't want to sell drugs to him.

Q: Okay. But, she knew, at that point in time, that you, on the sub—or, the 11th of September, had obtained drugs from her to transfer to someone else, correct?

A: She knew it was for someone else, but I didn't tell her his name.

VanSickle corroborated that Simmons told him that she would try to arrange for him to buy directly from her source, but that the source would not sell directly to him.

Simmons' trial testimony, corroborated by VanSickle, was clearly sufficient to establish that Murray was aware of Simmons' plan to redistribute the cocaine. It was unnecessary for the state to prove that Murray was aware of the specific transaction contemplated by Simmons or of the identity of the buyer to whom Simmons intended to sell. *Shindle v. State,* 731 P.2d 582, 586 (Alaska App.1987).

A closer question is whether Simmons' testimony was sufficient to establish Murray's intent to facilitate or promote Simmons' resale to VanSickle—in other words, whether the disputed testimony tended to show that Murray "in some sort associate[d] [herself] in the venture, that [s]he participate[d] in it as in something that [s]he wish[ed] to bring about, that [s]he [sought] by [her] action to make it succeed." *United States v. Peoni,* 100 F.2d 401, 402–03 (2d Cir.1938).

We conclude that the evidence, when viewed in the light most favorable to the state, was at least minimally sufficient to establish the requisite element of intent. Of particular significance is Simmons' testimony that Murray refused to sell directly to VanSickle and insisted on dealing through Simmons. From the fact that Murray had engaged in repeated sales of cocaine to Simmons, the jury could infer that Murray was selling cocaine for profit and that it was in her interest to increase her sales. The testimony concerning Murray's insistence on dealing through Simmons could reasonably have led jurors to infer that Murray intended to rely on Simmons as an intermediary, whose presence would enable her to continue making additional sales while providing protection against detection by the authorities.

Although this case presents a close question, we find that the evidence at trial was minimally sufficient to support a conviction and that the trial court did not err in denying the motion for a judgment of acquittal. Accordingly, on remand, the state will not be precluded from seeking to reindict and reprosecute Murray.

The conviction is REVERSED. The superior court is directed to enter an order on remand dismissing the i.￼ctment against Murray.