**STATE of Alaska, Petitioner,**

v.

**John S. AMEND, Respondent.**

**No. A–10496.**

Court of Appeals of Alaska.

March 11, 2011.

---

**39.** *See Martinez,* 113 P.3d at 1234.

**1.** AS 10.06.450(b).

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Petitioner.

Doug Miller, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for the Respondent.

Before COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

John Amend was stopped outside a convenience store for shoplifting. Immediately after he was stopped, Amend admitted to the crime. The police officer then handcuffed Amend and advised him of his *Miranda* rights. Amend waived his rights and agreed to continue speaking to the officer at the scene; he also agreed to let the officer search the pockets of his clothing.

When the officer searched Amend, he discovered some stolen food items and several OxyContin tablets. When Amend was asked

about the tablets, he told the officer that he intended to sell them.

Amend filed a pretrial motion seeking suppression of his statements to the police. Superior Court Judge Carl Bauman ruled that Amend's statements should be suppressed because (1) the officer failed to remind Amend of his *Miranda* rights in light of the potential felony drug charges and (2) the officer should have recorded the ensuing conversation.

We conclude that the officer was not required to make an audio recording because the interrogation took place in the field and not in a place of detention. We conclude that there was no need for the officer to remind Amend about his *Miranda* rights before he began questioning Amend about the OxyContin because Amend could readily understand the purpose of the officer's questions and the potential adverse consequences of answering those questions.

### Background

Kenai Police Officer Aaron Turnage was dispatched to the Holiday convenience store in Kenai in response to a shoplifting report. The dispatch indicated that the shoplifter was an adult male wearing a checkered coat and welding glasses. Turnage saw a man matching the description and pulled into a nearby parking lot. Turnage called to the man and, when he turned around, Turnage recognized him as Amend.

Turnage asked Amend about the shoplifting, and Amend immediately admitted that he had stolen food from the store. Turnage handcuffed Amend and gave Amend standard *Miranda* warnings. Amend stated that he understood his rights and agreed to speak with Turnage.

Turnage asked Amend for consent to search his pockets and Amend agreed. Inside Amend's jacket were five burritos and two boxes of cookies. Turnage then found seventeen-and-a-half OxyContin tablets in Amend's pants pocket.

According to Turnage, Amend said he was released from jail earlier in the day, but had no money. After his release he went to Ninilchik to obtain the tablets. Amend stated that he was selling the tablets for $120 apiece and that he already had buyers lined up.

Turnage did not record his conversation with Amend. Turnage ordinarily recorded investigative contacts, and he could not explain why he had not recorded the conversation in this case.

Amend was charged with fourth-degree theft,[1] second-degree misconduct involving a controlled substance,[2] and violation of his conditions of release.[3] Amend filed a motion to suppress the statements he made to the police. The court held an evidentiary hearing on the motion and took the testimony described above. In Amend's testimony, he acknowledged that he made the statements admitting that he intended to sell the OxyContin tablets, but asserted that he was only joking.

Judge Bauman found that Turnage provided Amend with *Miranda* warnings at the outset of their encounter. The judge also found that Amend, "though high at the time, had sufficient wherewithal and control of his faculties to knowingly and freely waive his right to remain silent and his right to counsel with regard to the shoplifting charges." The judge concluded that Amend's statements regarding the shoplifting and his admissions about his possession of the tablets were admissible.

But the judge concluded that the officer should have interrupted Amend at the point that he admitted that he owned the tablets to inform him that he was facing felony drug charges and to remind him of his *Miranda* rights. The judge also concluded that the ensuing conversation should have been recorded. The judge accordingly suppressed Amend's admission about his sale of the tablets. We granted the State's petition for review of the superior court's decision.

**1.** AS 11.46.150.

**2.** AS 11.71.020(a)(1).

**3.** AS 11.56.757(b)(2).

## Discussion

### *A single set of* Miranda *warnings was sufficient for this field interview.*

■ We find no reported Alaska cases examining the effect of a change in the subject matter of questioning after a valid *Miranda* waiver. But the United States Supreme Court addressed this issue in *Colorado v. Spring.*[4] In *Spring,* the defendant expressly waived his *Miranda* rights but later moved to suppress his confession, arguing that his waiver was not knowing and intelligent because the police never told him he would be questioned about his involvement in a murder.[5] The Court rejected Spring's claim, holding that "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."[6] The Court concluded that "a suspect's awareness of all the possible ·subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."[7]

We addressed this issue in an unreported decision in *Plumlee v. State.*[8] Daniel Plumlee confessed to committing an armed robbery after waiving his *Miranda* rights.[9] The police then informed Plumlee that his accomplice implicated him in other robberies and in a murder that occurred two days earlier.[10] Plumlee also confessed to these crimes, but argued on appeal that his confession was not voluntary because the police misled him about the subject matter of the interrogation.[11] We concluded that a suspect may make a valid waiver of their privilege against self-incrimination without knowing all the subjects of an interrogation in advance.[12]

■ We do not perceive any unique aspect of the Alaska constitutional privilege against self-incrimination that would require us to question our previous decision in *Plumlee.*[13] The Alaska Constitution does not "require the police to supply a suspect 'with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.' "[14] A "waiver is valid as long as the 'suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction.' "[15]

Even if we were prepared to create a special rule for instances where the police actively conceal or misrepresent the nature of their inquiry, there is nothing in the circumstances of this case that calls Amend's waiver of *Miranda* rights into question. The officer did not attempt to mislead Amend concerning the subject matters of the interrogation or the potentially incriminatory nature of Amend's answers. Although the direction of the interview changed after the officer discovered the OxyContin tablets in Amend's pocket, Amend was fully aware that the officer had discovered the OxyContin. Thus, Amend presumably understood why the officer would begin to question him about this drug, and how his answers to the officer's questions might be self-incriminatory. This change in the subject matter of the

4. 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987).

5. *Id.* at 567–69, 107 S.Ct. 851.

6. *Id.* at 574–75, 107 S.Ct. 851.

7. *Id.* at 577, 107 S.Ct. 851.

8. Mem. Op. & J. No. 4265, 2000 WL 1258329, at *4 (Alaska App. Sept.6, 2000).

9. *Id.* at *3.

10. *Id.*

11. *Id.*

12. *Id.* at *4.

13. *See generally Shorty v. State,* 214 P.3d 374, 379 (Alaska App.2009) (noting that a party who claims that the Alaska Constitution should be interpreted differently than the federal Constitution should point to something about the "text, context, or history" that justifies a different interpretation).

14. *Forster v. State,* 236 P.3d 1157, 1162–63 (Alaska App.2010) (quoting *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

15. *Id.* at 1163 (quoting *Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).

interrogation had no constitutionally significant impact on the validity of Amend's earlier waiver of his rights.

### The police were not obligated to record this field interrogation.

■ In *Stephan v. State*, the Alaska Supreme Court held that police are obligated to record "custodial interrogations in a place of detention, including the giving of the accused's *Miranda* rights." [16] The "unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process, under the Alaska Constitution, and ... any statement thus obtained is generally inadmissible." [17]

■ The *Stephan* court stated that this rule applies only when the custodial interrogation is conducted in a place of detention.[18] A place of detention is a location "such as a police station or jail, where it is reasonable to assume that recording equipment is available, or can be made available with little effort." [19]

We have many times recognized that the *Stephan* rule does not apply to crime scene interrogations. In *Resecker v. State*, we declined to extend *Stephan* to crime scene interrogations, even if recording equipment is available.[20] Similarly, in *Shindle v. State*, we concluded that, since the defendant was not in a place of detention when questioned, his

case fell outside the *Stephan* requirement.[21] We have also declined to extend the *Stephan* rule in several unpublished decisions.[22] Under these decisions, Turnage was not required to record his conversation with Amend because the interrogation did not occur at a place of detention.

Judge Bauman noted that, in the absence of a recording, Amend may be required to take the stand to support his contention that he was joking when he said that he had buyers for the tablets in his pocket. This may be so. But this is not a case where the police have lost or destroyed critical audio or video evidence.[23] We have not previously required the police to record or photograph all investigative procedures, even though there may be a disagreement about what happened.[24] Amend's right to due process is sufficiently protected by his right to confront and cross-examine Turnage at trial and to offer any evidence that would impeach or contradict his testimony.

This case would not be a good opportunity to extend the *Stephan* rule, even if we were inclined to do so. Turnage arrested Amend almost immediately after he was dispatched to the convenience store. The officer was conducting a search of Amend's pockets incident to this arrest when he discovered the OxyContin tablets and he immediately asked Amend about his discovery. There is no indication that Turnage delayed transporting Amend to avoid the *Stephan* recording re-

---

16. 711 P.2d 1156, 1162 (Alaska 1985).

17. *Id.* at 1158.

18. *Id.* at 1165 n. 33.

19. *Id.*

20. 721 P.2d 650, 653 n. 1 (Alaska App.1986).

21. 731 P.2d 582, 585 (Alaska App.1987).

22. *See, e.g., Watson v. State*, Mem. Op. & J. No. 4575, 2002 WL 1150731, at *2 (Alaska App. May 29, 2002) (reiterating that Alaska case law "unequivocally limits *Stephan* to custodial interrogations occurring in places of detention"); *Fredrichs v. State*, Mem. Op. & J. No. 4238, 2000 WL 852435, at *2 (Alaska App. June 28, 2000) (holding that because the defendant was not interrogated in a place of detention, there was no duty to record the field contact); *Hendricks v. State*,

Mem. Op. & J. No. 4107, 1999 WL 679025, at *1 (Alaska App. Sept.1, 1999) (indicating that the court has "repeatedly declined to extend the *Stephan* rule to ... investigative interviews" that occur outside a place of detention).

23. *See Thorne v. Dep't of Pub. Safety, State*, 774 P.2d 1326, 1331–32 (Alaska 1989) (requiring sanctions for unexplained destruction of a videotape of a DUI booking procedure); *Catlett v. State*, 585 P.2d 553, 558 n. 5 (Alaska 1978) (suggesting that due process requires police to have standard procedures for preserving crime scene photographs).

24. *See Ostlund v. State*, 51 P.3d 938, 942–43 (Alaska App.2002) (holding that no sanctions were required when police did not photograph crime scene); *Swanson v. City & Borough of Juneau*, 784 P.2d 678, 681 (Alaska App.1989) (holding that a videotape (rather than an audiotape) of sobriety tests was not required).

quirement. We conclude that Turnage was not required to interrupt his arrest and search of Amend in order to activate his recorder.

### Conclusion

We REVERSE the superior court's decision.