**Leigh F. SELIG, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10777.

Court of Appeals of Alaska.

Sept. 14, 2012.

Jason A. Gazewood, Gazewood & Weiner, Fairbanks, for the Appellant.

William A. Spiers, Assistant District Attorney, Fairbanks, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

Leigh F. Selig was arrested for driving under the influence, after he caused a four-vehicle collision. Selig was taken to the trooper station, where he was asked to submit to a breath test. The breath test showed that Selig had a blood alcohol level of .181 percent, over twice the legal limit. Selig then exercised his right to an independent blood test. This second test yielded essentially the same result: according to the blood test, Selig's blood alcohol level was .182 percent.

After Selig was formally charged with driving under the influence, he asked the district court to suppress the results of both the breath test and the blood test, as well as all other evidence gathered during his DUI processing, on the basis that the troopers did not make an audio recording of the DUI processing.

Selig noted that in *Stephan v. State*, 711 P.2d 1156, 1159 (Alaska 1985), the Alaska Supreme Court held that the police are required to record every custodial interrogation that occurs at a police station (or any other place of detention) if recording is feasible. Selig argued that the *Stephan* rule should be expanded to cover any DUI processing at a police station, even if the police do not interrogate the arrestee during the processing. He contended that, without a recording of the DUI processing, "it [was] impossible for Mr. Selig or his counsel to determine what happened [during the] processing"—thus leaving open the possibility that the trooper did not properly advise Selig of his right to consult an attorney, or did not properly explain Selig's right to an independent blood test.

District Court Judge Jane F. Kauvar held a hearing to investigate this matter. Based on the evidence presented at that hearing (in particular, evidence that the trooper's audio recorder was malfunctioning in the days preceding Selig's arrest), Judge Kauvar concluded that the trooper's failure to record his interactions with Selig at the trooper station was perhaps understandable, but not necessarily excusable. However, Judge Kauvar found that the trooper had not violated the *Stephan* rule—because, even though the DUI processing was not recorded, the trooper did not interrogate Selig during the DUI processing.

(The judge also noted that, in any event, Selig had not filed a motion seeking suppression of any statements he made during the DUI processing.)

With respect to Selig's contention that a recording of the DUI processing would show whether the trooper waited the mandated 15–minute observation period before administering the breath test, Judge Kauvar pointed out that the length of the DUI processing could be determined by comparing the trooper's time of arrival at the station (which was recorded in the dispatch log notes) and the time of the breath test itself (which is recorded by the Datamaster machine). Judge Kauvar also noted that Selig's attorney had not questioned the trooper about this issue (*i.e.,* the adequacy of the observation period) when the trooper testified at the evidentiary hearing. Finally, Judge Kauvar noted that Selig's attorney had not affirmatively argued that the observation period in Selig's case was inadequate.

With respect to Selig's contention that the trooper might not have advised him of his right to consult an attorney before deciding whether to take the breath test, Selig took the stand at the evidentiary hearing and testified that he had no memory of any conversation with the trooper about his right to call an attorney for advice during the DUI processing. Judge Kauvar concluded that Selig had no memory of any conversation on this topic because there had probably been no such conversation.

Judge Kauvar noted that Alaska law does not require officers to affirmatively advise DUI arrestees of their right to consult an attorney before deciding whether to take the breath test. Rather, the officer's duty is only to honor an arrestee's request to contact an attorney *if* the arrestee makes this request.[1] And Judge Kauvar concluded that Selig would have remembered if he had affirmatively asked the trooper for an opportunity to call an attorney, and the trooper had refused. In other words, Judge Kauvar found that Selig had not affirmatively requested the opportunity to contact an attorney before taking the breath test.

With respect to whether Selig was properly advised of his right to an independent blood test (to check the results of the breath test), Judge Kauvar noted that even though Selig apparently declined the test at first, he ultimately did exercise his right to an independent blood test. (This blood test showed that Selig had a blood alcohol level of .182 percent—essentially the same as Selig's breath test result of .181 percent.)

Based on these findings, Judge Kauvar denied Selig's suppression motion. She ruled that Alaska law does not require the police to record DUI processings (unless custodial interrogation takes place), and she alternatively ruled that, in any event, Selig had failed to show how he might have been prejudiced by the lack of a recording.

The lack of a recording came up again at Selig's trial. Selig's attorney asked the trial judge to instruct the jury that, because the trooper failed to record his interactions with Selig during the DUI processing, the jury should presume that all of the information that would have been on the recording— presumably, all the events of the DUI processing, and all statements made during that processing—would support Selig's claim that

---

1. *See Annas v. State,* 726 P.2d 552, 560 (Alaska App.1986); *Van Wormer v. State,* 699 P.2d 895, 897–98 (Alaska App.1985), *overruled on other grounds by Zsupnik v. State,* 789 P.2d 357 (Alaska 1990) (a DUI arrestee must request the opportunity to consult with counsel); *Anchorage v. Erickson,* 690 P.2d 20, 21 (Alaska App.1984) (a defendant forfeits the right to consult an attorney before taking the breath test if the defendant does not request the opportunity to speak with an attorney prior to taking or refusing the breath test).

he was not guilty. The trial judge declined to give this proposed jury instruction.

In this appeal, Selig renews his argument that all of the evidence obtained during his DUI processing should be suppressed because the troopers failed to record the DUI processing. Alternatively, Selig argues that he should be granted a new trial, and that the jurors at this new trial should be instructed to presume that all the unrecorded events of the DUI processing would support Selig's innocence.

*The trooper's failure to record the DUI processing*

In *Stephan v. State*, 711 P.2d 1156, 1159 (Alaska 1985), the Alaska Supreme Court held that the due process clause of our state constitution requires the police to make an audio recording, whenever feasible, of all custodial interrogations that occur in a place of detention (for example, police stations). Selig asks this Court to extend the *Stephan* recording requirement so that it governs not only custodial interrogations conducted at a police station but also all DUI processings, even when no interrogation occurs during the processing.

Obviously, many DUI processings do involve some amount of custodial interrogation, and that aspect of the processing is already covered by the *Stephan* rule. But Selig asks us to extend *Stephan* to all aspects of the DUI processing, including the interaction leading up to the arrestee's decision whether to take the breath test, the interaction preceding the arrestee's decision whether to request an independent blood test, and all other non-interrogation aspects of the officer's interaction with the arrestee.

In his brief to this Court, Selig argues that a recording of the DUI processing is needed to verify various aspects of the police's dealings with the arrestee—in particular, to determine (1) whether the police properly advised the arrestee concerning the breath test, (2) whether the police honored any request the arrestee might have made to consult an attorney before deciding whether to take the breath test, and (3) whether the police properly advised the arrestee concerning the arrestee's right to an independent blood test.

In addition, Selig argues that a recording is needed to verify that the police observed the arrestee for the mandated 15 minutes before administering the breath test.

Any or all of these issues may be important, and may be actively disputed, in a prosecution for DUI or breath-test refusal. And when there is a dispute concerning these issues, the availability of an audio or video recording of the DUI processing would generally aid the fact-finder (whether judge or jury) in resolving the dispute. But this, by itself, is not a sufficient basis for extending the *Stephan* rule to DUI processings—*i.e.*, for holding that the due process clause of the Alaska Constitution requires the police to record DUI processings whenever feasible.

Traditionally, in our legal system, factual disputes are resolved by having the parties present their witnesses, and then having the opposing parties subject those witnesses to cross-examination and other forms of impeachment. The *Stephan* requirement that conversations and events be recorded, as an advance precaution against potential factual disputes in the future, is a departure from this traditional rule.

As we noted in *Shindle v. State*, the special recording requirement announced in *Stephan* was the result of "a careful balancing of competing interests".[2] Our supreme court imposed the recording requirement, and the concomitant rule that unrecorded statements would normally be suppressed, because the court perceived "a systemic problem" arising from the fact that law enforcement agencies and lower courts had repeatedly failed to give due regard to the supreme court's admonitions concerning the need to record custodial interviews. *Stephan*, 711 P.2d at 1163.[3] That is, police agencies and courts had repeatedly failed to give due regard to "[t]he need to insure that the voluntariness of a [suspect's] confession can be confirmed by reference to an accurate and complete record". *Id.* at 1160.

---

**2.** 731 P.2d 582, 585 (Alaska App.1987).

**3.** Referring to *Mallott v. State*, 608 P.2d 737 (Alaska 1980).

As we noted in *Shindle*, the purpose of the *Stephan* rule was not to have the police record all aspects of their investigative efforts whenever feasible. Rather, the *Stephan* rule had a more narrow focus: "assuring that confessions are voluntarily made":

> While the court in *Stephan* did not expressly limit the [recording] rule ... to cases involving the voluntariness of a confession, the court's discussion makes it clear that the court's primary concern was with the problem of involuntary confessions and ... related fifth and sixth amendment violations[.]

*Shindle*, 731 P.2d at 584.

As our *Shindle* decision explains, the *Stephan* court focused on the problem of involuntary confessions because, unlike violations of the Fourth Amendment, violations of the Fifth and Sixth Amendments may result in involuntary confessions, and the introduction of an involuntary confession will undermine the integrity of the verdict at trial. In contrast, "[c]laims based solely on ... violations of fourth amendment rights do not call into question the accuracy of the ... verdict ... [or] the integrity of the fact[-]finding process." *Shindle*, 731 P.2d at 585.

See *Moreau v. State*, 588 P.2d 275, 279–80 (Alaska 1978), where the supreme court relied on this same rationale when holding that search and seizure claims ordinarily can not be raised for the first time on appeal, even if the trial court record clearly reveals a ground for suppression of the evidence. The supreme court reached this result because, even when evidence is obtained in violation of the Fourth Amendment, the evidence remains reliable, and thus Fourth Amendment errors do not affect the fundamental fairness of the fact-finding process.

(See also *Elson v. State*, 633 P.2d 292, 300 (Alaska App.1981), where this Court held that, in most circumstances, evidence obtained in violation of the Fourth Amendment can be offered at sentencing—again, because the evidence remains reliable, even though it was unlawfully obtained.)

Criminal litigation certainly presents many important factual disputes apart from the voluntariness of an arrested suspect's state-ments to the police. But the *Stephan* rule focuses on the particular problem of the voluntariness of statements made during custodial interrogation (and only if the custodial interrogation occurs in a place of detention). *Stephan*'s due process rationale is not applicable to situations where *reliable* evidence is obtained unlawfully—through Fourth Amendment violations or other questionable methods.

Because of the narrow focus of the *Stephan* decision, this Court has repeatedly declined to extend the recording requirement to other situations, even though an audio or video recording might be of significant aid in resolving factual disputes, and even though such a recording might have been feasible. In *Resecker v. State*, 721 P.2d 650, 653 n. 1 (Alaska App.1986), and more recently in *State v. Amend*, 250 P.3d 541, 545 (Alaska App.2011), we declined to extend the *Stephan* recording rule to crime scene interrogations, even if recording equipment is available. In *Swanson v. Juneau*, 784 P.2d 678, 681 (Alaska App.1989), we declined to require the police to videotape field sobriety tests, even if videotaping is feasible. And in *Shindle*, 731 P.2d at 585, we declined to require the police to record in-the-field Fourth Amendment waivers.

As a general matter, we have declined to extend *Stephan* to "[require] the police to record or photograph all investigative procedures, even though there may be a disagreement about what happened." *Amend*, 250 P.3d at 545. We have instead relied on the traditional precept that "[a defendant's] right to due process is sufficiently protected by [the defendant's] right to confront and cross-examine [the police] at trial[,] and to offer any evidence that would impeach or contradict [their] testimony." *Ibid.*

With one exception (which we address in the next paragraph), there is no dispute concerning the reliability of the evidence that Selig seeks to suppress in the present appeal—to wit, the result of his breath test and the result of his independent blood test. Selig argues that, at least potentially, the police might have failed to properly advise him concerning the breath test, or might have failed to honor his request to consult an

attorney before deciding whether to take the breath test, or might have failed to properly advise him concerning his right to an independent blood test. But none of these potential problems affects the reliability of the resulting evidence.

Selig does argue that a recording is needed to verify that the police observed an arrestee for the mandated 15 minutes before administering the breath test. The failure of the police to abide by the 15–minute observation period could potentially put the accuracy of the test result in doubt. But as Judge Kauvar observed when she denied Selig's suppression motion, the times recorded in the police dispatch log, coupled with the time recorded by the Datamaster, will normally provide an independent verification of the time elapsed between a person's arrest, their arrival at the police station, and the administration of the breath test.

We also note that we have upheld observation periods that commenced in the field following a defendant's arrest, before the defendant arrived at the station.[4] Thus, even if we imposed a requirement that DUI processings had to be recorded once the arrestee arrived at the station, such recordings would not necessarily answer the question of whether the pre-testing observation period was sufficient.

Perhaps more importantly, even though we have seen individual cases that raised doubts concerning the types of factual issues that Selig discusses in his brief, we have not seen the kind of systemic problems that led the supreme court to adopt the recording requirement in *Stephan*. Because the *Stephan* rule "reflects a careful balancing of competing interests", we have held that expansion of that rule "[should] be undertaken cautiously, and only if the need for [the] expansion is demonstrated by experience with the current rule."[5] Selig does not assert that the police have been systematically ignoring the rights

of DUI arrestees, and the facts of his case do not suggest this sort of endemic disregard.

■ For these reasons, we hold that the police are not required to record the non-interrogative aspects of DUI processing.

*The trial judge's refusal to give Selig's proposed jury instruction dealing with the trooper's failure to record the DUI processing*

In *Thorne v. Department of Public Safety*, 774 P.2d 1326, 1330–32 (Alaska 1989), the Alaska Supreme Court addressed the question of the proper remedy for situations where the police destroy evidence that they have gathered during a criminal investigation.

The defendant in *Thorne* was arrested for driving under the·influence and he was taken to jail, where he was asked to perform sobriety tests.[6] The police videotaped Thorne's performance of these sobriety tests, but they erased and re-used the videotape after Thorne's criminal case was resolved by a plea.[7] (Thorne pleaded no contest to a reduced charge of negligent driving.[8]) Thus, the videotape was no longer available when the Department of Public Safety took administrative action against Thorne's driver's license.

The supreme court held that the police violated Thorne's right to due process when they destroyed the videotape before the administrative proceeding was resolved.[9] The court then considered the type of remedy that Thorne should receive:

We now address the appropriate sanction for the state's failure to preserve the videotape. The state's good or bad faith in failing to preserve the videotape is relevant to determining the appropriate sanction. We look to the degree of culpability on the part of the state, the importance of the evidence lost, the prejudice suffered by

---

4. *See Gilbreath v. Anchorage*, 773 P.2d 218, 221–22 (Alaska App.1989).

5. *Shindle*, 731 P.2d at 585.

6. *Thorne*, 774 P.2d at 1327–28.

7. *Id.* at 1328–29.

8. *Ibid.*

9. *Id.* at 1330–31.

the accused, and the evidence of guilt adduced at the trial or hearing.

We think an appropriate sanction in this case would be to remand the case back to the [administrative] hearing officer with directions to presume that the videotape would have been favorable to Thorne.

*Thorne,* 774 P.2d at 1331 (citations omitted).

■ Selig argues that, because of the trooper's failure to record his DUI processing, he was entitled to a similar jury instruction at his trial. But Selig's case differs from *Thorne* in a fundamental way. Selig's case does not involve police destruction of physical evidence. Rather, it involves a failure to "collect" evidence—that is, a failure to make a recording of visual and aural evidence.

(Alternatively, one might categorize Selig's case as presenting an instance where the police failed to "create" evidence—in the sense that they failed to create a recording of the DUI processing.)

The general rule is that the State has no duty to collect physical evidence, and the State's duty to preserve evidence applies only to physical evidence that has actually been gathered.[10] Thus, in normal circumstances, even though the State's destruction of previously collected evidence might entitle a criminal defendant to the type of favorable jury instruction discussed in *Thorne,* the State's failure to collect evidence would not entitle a defendant to such an instruction.

It follows that Selig's jury instruction claim really hinges on whether the trooper who arrested Selig violated a legal duty by failing to record Selig's DUI processing. We have already addressed this issue in the preceding section of this opinion, and we resolved this issue adversely to Selig. Accordingly, Selig was not entitled to his proposed jury instruction.

*Conclusion*

The judgement of the district court is AFFIRMED.

---

**10.** *Snyder v. State,* 879 P.2d 1025, 1028 (Alaska App.1994), *reversed on other grounds,* 930 P.2d 1274 (Alaska 1996); *March v. State,* 859 P.2d 714, 716 (Alaska App.1993).