James D. **WYRICK**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 3677.

Supreme Court of Alaska.

Feb. 2, 1979.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Susan Delbert, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Chief Justice.

■ James Wyrick appeals his burglary conviction because the state did not preserve and make available to him physical items from which fingerprints were taken. This failure, Wyrick argues, prevented him from testing the reliability of the fingerprints and violated the state's affirmative duty to disclose potentially favorable evidence to the defense.[1]

The police obtained twenty-two latent prints from items of a restaurant which had been burglarized and arrested Wyrick after

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), imposed on the state a due process obligation to disclose evidence favorable to the defense. When the requested evidence is unavailable because of failure of the state to preserve it, and the court is unable to determine whether it would be favorable to the accused, the court must evaluate whether the evidence might have led the jury to entertain a reasonable doubt about the defendant's guilt. *Catlett v. State*, 585 P.2d 553 (Alaska 1978).

Criminal Rule 16 specifies the scope of discovery in Alaska criminal trials. Rule 16(b)(3) provides for discovery of:

*Information Tending to Negate Guilt or Reduce Punishment.* The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor.

Rule 16(b)(7) provides for discovery of:

*Other Information.* Upon a reasonable request showing materiality to the preparation of the defense, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by [other] subsections . . . .

they matched four of those prints with a set of Wyrick's prints on file with the Alaska State Troopers. The state preserved and made available to Wyrick all the prints taken from the restaurant.

The defense made a pre-trial motion for the production of the items from which the prints were taken, or alternatively, for suppression of the fingerprint evidence. The items were unavailable and so could not be produced.[2] The court denied the defendant's suppression motion, stating that the fingerprints, not the items from which they were taken, were the evidence which the state had a duty to preserve.

At trial, the fingerprints were the crucial evidence linking the defendant to the burglary. There was lengthy cross-examination of John Sauve, an expert in fingerprint analysis and a laboratory technician with the Alaska State Troopers. Sauve had analyzed the prints and concluded that four were Wyrick's.

■ The defendant argues that preservation of the items would have allowed him to test whether the prints were accurately lifted and perhaps to discover prints of other persons who might have qualified as suspects in the burglary.[3] Our recent decision in *White v. State*, 577 P.2d 1056, 1058–60 (Alaska 1978), is dispositive of Wyrick's claim. The defendant in *White* argued that the placement and direction of the prints on a lamp were important to his defense.[4] We rejected the claim that the state's failure to preserve the lamp violated the defendant's right to due process and his statutory right of discovery.

Regarding the defendant's claim that he wished to test the fingerprints, we stated in *White*:

The prints were available to White along with other evidence. The reliability of the fingerprint identification could thus be tested independently. Therefore, the situation differs from that in *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976), where the results of the breathalyzer test could not be assessed independently because the control ampoule had been discarded.

577 P.2d at 1059 (footnote omitted). Wyrick had similar opportunity to test the accuracy of his fingerprint identification.[5]

Regarding the state's duty to preserve potentially favorable evidence, we stated in *White*:

White was not precluded from arguing his account of the presence of the fingerprints because the state's laboratory technician acknowledged that the position of the prints as he remembered them could have been consistent with White's explanation. However, even if the position and direction of the prints had been as White contends, his account of how they came to be positioned in that manner would not have been established to the exclusion of the state's explanation. Thus, while the position and direction of the prints might have been of some use to White in arguing his version of the facts, such contextual evidence can hardly be viewed as exculpatory in itself. Here, the materiality of the evidence is marginal at best and there exists no hint or suggestion of bad faith on the government's part. White neither requested the item nor indicated the importance of the general type of evidence involved. In these circumstances, we hold that any

---

2. The items had either been destroyed or returned to their owners.

3. The defendant also states that Sauve did not adequately demonstrate how he arrived at his identification. The defendant argued that point most strenuously to the jury and they apparently gave credence to Sauve's testimony nonetheless. The defendant could have called his own expert witness to demonstrate the process of identification; he chose not to.

4. The defendant in *White* admitted he had touched the lamp, but stated that he had helped the owner of the lamp move into her trailer. The state argued that the defendant had ripped the lamp from the wall outside the trailer to conceal his presence. 577 P.2d at 1059.

5. The defendant states there are different ways to lift fingerprints but does not indicate that different methods of lifting would cause a print from one person to look like a print from another person.

resulting deprivation arising from a failure to preserve and produce the fingerprints' position and direction does not rise to the level of a due process violation, and that the state's failure to preserve and produce the position and direction of the fingerprints as found on the lamp did not violate Criminal Rule 16(b)(7).

577 P.2d at 1060 (footnotes omitted).

There are some differences between *White* and the case at bar, notably that Wyrick requested the items before trial. But, if anything, Wyrick's claim is even weaker than the defendant's in *White*. Unlike the defendant in *White*, the placement and direction of the prints in this case were not important because Wyrick denied being in the restaurant at all at the time of the burglary.[7] Wyrick argues that he might have found other prints on the items. Sauve, the police investigator, lifted all the prints from the items that he could.[8] He did obtain eighteen prints which were not identified as Wyrick's and those prints were available for the defense to find other potential suspects.[9]

The conviction is AFFIRMED.

---

7. He admitted being there once, four months previous to the burglary.

8. The government certainly would have been motivated to get all possible prints from the items. At that point, they had no suspicions that Wyrick or any other particular person had committed the burglary. We would have a different case if there were any reason to believe the police did not take all the prints from the items—either intentionally or due to improper lifting techniques.

9. For example, Wyrick could have taken the prints of the restaurant's employees—something he argues the state should have done—and determined if the other prints belonged to them.