Mark J. THORNE, Appellant,

v.

DEPARTMENT OF PUBLIC SAFETY, STATE OF ALASKA, Appellee.

No. S–2566.

Supreme Court of Alaska.

May 26, 1989.

Rehearing Denied June 15, 1989.

Peter F. Mysing, Kenai, for appellant.

Robin A. Taylor and Teresa E. Williams, Asst. Attys. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

A Soldotna police officer arrested Mark Thorne for driving while intoxicated. Thorne performed field sobriety tests at the scene of the accident just prior to the

arrest and again at the Wildwood Pretrial Facility approximately an hour later. The police videotaped the tests given at the Pretrial Facility but destroyed that videotape prior to the civil license revocation hearing. This appeal addresses whether the failure to preserve the videotape of the field sobriety tests performed at the Pretrial Facility violated Thorne's constitutional rights to due process and to confront and cross-examine witnesses.

## I.

On March 16, 1987, Mark Thorne negligently caused his automobile to collide with one driven by Ben Metz. Thorne admitted that he was at fault. Metz called the Soldotna police, and officer Donald Fritz responded, arriving at the scene within 10 minutes. Officer Fritz questioned Metz briefly and allowed him to depart. Fritz questioned Thorne in the patrol car and noted the odor of alcohol on Thorne's breath. Fritz requested Thorne to perform some field sobriety tests. Thorne consented. Fritz administered numerous tests, including the recital of the ABC's, counting backwards, the one-legged balance test, and the heel to toe walk. Fritz felt that Thorne performed unsatisfactorily on these tests. Fritz requested Thorne to take a breathalyzer test, which he did. The portable breath test machine showed a blood alcohol content of .10 percent.[1] Fritz testified that even if Thorne's test had produced a result below the legal limit, Fritz would not have released Thorne "[b]ecause of his performance on the other tests."

Fritz arrested Thorne and took him to the Wildwood Pretrial Facility. There, approximately one hour after the initial tests, Thorne performed the same field sobriety tests and the performance was videotaped. Fritz testified at the later hearing that he had not noted in his report that Thorne's performance at Wildwood was any different from his performance at the scene of

the accident. This, Fritz conceded, indicated that Thorne's performance at Wildwood was generally "similar" to his performance in the field. Fritz administered a second breath test to Thorne, which showed a blood alcohol level of .131 percent. Fritz then seized Thorne's driver's license and issued Thorne a Notice and Order of Revocation.

This Notice stated that Thorne's license would be revoked as of March 23, 1987 unless he requested an administrative review of the revocation. Due to a June, 1986 conviction for driving while intoxicated, Thorne's license would have been suspended for one year.[2] Thorne requested an administrative review within seven days, and a hearing was set for June 1, 1987. In a letter accompanying the request for review, Thorne's attorney, Peter Mysing, referred to the need to check the "results of the percholorate tube" and "also the possible need to subpoena police officers involved in the case," but he did not request preservation of the videotape.

In a letter dated March 31, 1987,[3] Mysing requested the agency in charge of the administrative review to cause Officer Fritz and Ben Metz (the other driver) to be present at Thorne's hearing. The videotape was not mentioned. The agency subpoenaed both individuals, and they appeared at the hearing.

On May 12, 1987, Thorne entered a no contest plea to the criminal charge of negligent driving. The police, having received no request to preserve the videotape, erased and recycled the tape sometime between May 12 and June 1, 1987.

At the June 1, 1987 hearing, assuming that Fritz had brought the videotape with him, Mysing requested the hearing officer to view the videotape before rendering a decision. Officer Fritz informed the parties that the tape was no longer available. Mysing moved that the charges against

---

1. .10 percent blood alcohol is the level at and above which a person is by statute conclusively presumed to be intoxicated. AS 28.35.030(a)(2).

2. AS 28.15.165; AS 28.15.181(c).

3. The hearing officer's notes of the hearing contain a notation to the effect that the letter was received by the agency on May 20, 1987 in an envelope bearing a postmark of May 19, 1987. It thus is likely that the letter was misdated.

Thorne be dismissed, but the hearing officer proceeded to rule against Thorne, finding that "the officer had reasonable grounds to believe [Thorne was] driving while intoxicated."

Thorne appealed to superior court on June 5, 1987. The superior court affirmed the agency's decision on December 11, 1987. Thorne appeals, arguing (1) that the state's failure to preserve the videotape violated his rights to due process and to confront and cross-examine witnesses, and (2) that he was denied a fair hearing because the hearing officer was biased against him and rendered a decision against the weight of the evidence.

■ The superior court reviewed the agency's determination for misinterpretation of law, arbitrary or capricious acts, or determinations unsupported by the record. AS 28.15.166(m). We review the agency's determination independently of the superior court since the superior court was acting as an intermediate court of appeal. *Barcott v. Department of Pub. Safety*, 741 P.2d 226, 228 (Alaska 1987).

## II.

A driver's license "constitutes an important property interest which is protected under the state due process clause." *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981).[4] Under Alaska's statutory scheme, a licensed driver who produces a breathalyzer test result of .10 percent blood alcohol or who refuses to take the breathalyzer test when requested to automatically has his or her license suspended at the end of a seven day period unless the driver requests an administrative review.[5] Such administrative review consists of a hearing before

a hearing officer[6] where the issues are limited to "whether the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while intoxicated" and whether the driver refused to take the breathalyzer test or, upon taking it, produced a result of .10 percent blood alcohol or higher.[7]

■ In the context of this administrative license revocation hearing, the due process clause guarantees the driver a "meaningful hearing before the state can suspend his license." *Champion v. Department of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986); *see also Graham*, 633 P.2d at 216.

In defining a meaningful hearing, we are guided by "considerations of fundamental fairness." *Whisenhunt v. Department of Pub. Safety*, 746 P.2d 1298, 1300 (Alaska 1987).

We have stated that "the same procedural safeguards apply in civil driver's license revocation proceedings for driving while intoxicated as apply in criminal prosecutions for that offense." *Barcott*, 741 P.2d at 228. The licensee's procedural safeguards at a revocation proceeding do not include a jury trial or the requirement of proof of guilt beyond a reasonable doubt. However, considerations of fundamental fairness have led us to hold that these safeguards do include the right to consider the inherent margin of error in breathalyzer test results, *Barcott*, 741 P.2d at 230, to have a breath sample preserved by the state for the purpose of allowing the accused to test the reliability and credibility of the breath test, *Champion*, 721 P.2d at 133; *Briggs v. Department of Pub. Safety*, 732 P.2d 1078 (Alaska 1987), and to exclude

---

4. The due process clause of the Alaska Constitution provides:
   No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.
   Alaska Const. art. I, § 7.

5. AS 28.15.165(a). The amount of time for which the license is suspended differs with the number of previous convictions of serious driving offenses. AS 28.15.165(d), 28.15.181(c).

6. *See Baker v. City of Fairbanks*, 471 P.2d 386, 402 n. 28 (Alaska 1970) (no jury trial required for administrative revocation of driver's license where "lawful criteria other than criminality are a proper concern in protecting public welfare and safety").

7. AS 28.15.166(f), (g). If either of these issues is answered in the negative (no reasonable grounds to believe *or* breath test produces result below .10 percent), the license may not be suspended or revoked. AS 28.15.166(j).

from the civil revocation hearing the results of breathalyzer tests acquired in violation of the accused's statutory right to consult counsel. *Whisenhunt*, 746 P.2d at 1299–1300.

We conclude that Thorne's due process rights at the revocation hearing were violated by the state's failure to preserve the videotape. Two considerations lead to this result. First, if Thorne were charged with the crime of driving while intoxicated, he would be entitled to have the videotape made available to him at the criminal trial, so under *Barcott* he should have that right at the civil proceeding. Second, considerations of fundamental fairness dictate that where the burden of preservation is so slight, evidence being potentially relevant to an issue of central importance at the revocation proceeding should be preserved.

Addressing the first point, our cases clearly establish that the state must preserve and make available to a criminal defendant material evidence gathered in a criminal investigation which may prove important in the preparation of the accused's defense.[8] The state's good or bad faith is not necessarily dispositive of whether the state's failure to preserve the evidence constitutes a due process violation. *Williams v. State*, 629 P.2d 54, 64 n. 22 (Alaska 1981); *Putnam v. State*, 629 P.2d 35, 43 n. 17 (Alaska 1980); *Lauderdale v. State*, 548 P.2d 376, 381–82 & 382 n. 11 (Alaska 1976).[9] Where the evidence has been destroyed, the issue is whether it would have been favorable to the accused. If the court is unable to make this determination, the court must evaluate whether the evidence "might have led the jury to entertain a reasonable doubt about the defendant's guilt." *Wyrick v. State*, 590 P.2d 46, 46 n. 1 (Alaska 1979); *Torres v. State*, 519 P.2d 788, 795 (Alaska 1974). The videotape here was made in connection with the criminal investigation of Thorne. If the videotape had shown Thorne performing the sobriety tests flawlessly, it might have led the jury to entertain a reasonable doubt about his guilt of the crime of driving while intoxicated. Thorne would have been entitled to have the videotape preserved and made available to him. *Barcott* thus requires

8. Alaska Criminal Rule 16(b); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (due process violated by prosecutorial suppression of material evidence favorable to defendant); *Torres v. State*, 519 P.2d 788, 795 (Alaska 1974) ("the due process requirement applies to all evidence which might have led the jury to entertain a reasonable doubt about defendant's guilt, and this test is to be applied generously to the accused when there is 'substantial room for doubt' as to what effect disclosure might have had," (quoting *United States v. Bryant*, 439 F.2d 642, 648 (D.C.Cir.1971)); *Lauderdale v. State*, 548 P.2d 376, 381 (Alaska 1976) (state's failure to preserve breathalyzer ampoules which may have provided scientifically reliable data bearing on guilt or innocence is a violation of due process right to fair trial, "without any need for a showing of prejudice"); *Catlett v. State*, 585 P.2d 553, 558 n. 5 (Alaska 1978) ("[P]reservation of photographs and other real evidence is of special importance to defense preparation. Evidence in question should not be destroyed based on an investigating officer's evaluation of its usefulness."); *Wyrick v. State*, 590 P.2d 46, 46 n. 1 (Alaska 1979) (State has "due process obligation to disclose evidence favorable to the defense." Where unavailable, court must determine whether "the evidence might have led the jury to entertain a reasonable doubt about the defendant's guilt."); *Oksoktaruk v. State*, 611 P.2d 521, 528 (Alaska 1980) ("law enforcement agencies are expected to preserve such tape recordings, and our courts should critically examine excuses given for destruction"); *Putnam v. State*, 629 P.2d 35, 43 (Alaska 1980); *State v. Contreras*, 674 P.2d 792, 821 (Alaska App.1983), *rev'd on other grounds*, 718 P.2d 129 (Alaska 1986).

9. The U.S. Supreme Court recently held in *Arizona v. Youngblood*, —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), that a criminal defendant must show bad faith on the part of police in the destruction of "potentially useful evidence," as opposed to "material exculpatory evidence," to establish a violation of the U.S. Constitution's Due Process Clause. We have construed the Alaska Constitution's Due Process Clause to not require a showing of bad faith. The *Youngblood* decision could have the unfortunate effect of encouraging the destruction of evidence to the extent that evidence destroyed becomes merely "potentially useful" since its contents would be unprovable. Our construction of the Alaska Constitution reflects our agreement with Justice Stevens' belief that there may be cases "in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." *Youngblood*, —— U.S. at ——, 109 S.Ct. at 291, 102 L.Ed.2d at 291 (Stevens, J., concurring).

that it be preserved and made available to him at the revocation hearing, since the preservation of a videotape is a "procedural safeguard" akin to the protections recognized in *Whisenhunt, Barcott, Briggs* and *Champion*, as opposed to the substantive requirements of a jury trial and proof beyond a reasonable doubt.

Fairness also dictates this result. Our revocation hearing decisions stress that the accused must be granted the opportunity to fully contest issues of "central importance" to the revocation decision. *Champion,* 721 P.2d at 133.

Given the limited scope of the administrative inquiry, and the fact that both of Thorne's breathalyzer tests did produce a result of at least .10 percent, the only ground Thorne had at the hearing for challenging the revocation of his license was whether the arresting officer had reasonable grounds to believe Thorne was driving while intoxicated. Certainly, a meaningful and fundamentally fair hearing would include the opportunity to contest this just as it includes the right to contest the test results themselves. This is an issue of "central importance," and the videotape was relevant to that inquiry. Destruction of the videotape infringed Thorne's ability to fully contest the issue.

Furthermore, where the burden of preservation is so minimal,[10] and the evidence is of even slight potential relevance,[11] the state bears a heavy burden in justifying its destruction. While the Alaska Due Process Clause does not impose on police "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution," *Arizona v. Youngblood,* —— U.S. ——, ——, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (Rehnquist, C.J., construing U.S. Constitution Due Process Clause), police are not free to discard evidence potentially relevant to a pending license revocation proceeding when a related criminal proceeding is concluded. The state has not borne its burden of justifying destruction of the evidence here.

Even if preserving videotapes of post-arrest field sobriety tests for use at administrative hearings imposes an incremental burden on the state, we believe an accused's due process rights outweigh this consideration. *Lauderdale,* 548 P.2d at 382; *see also Municipality of Anchorage v. Serrano,* 649 P.2d 256, 259 (Alaska App. 1982); *Mallott v. State,* 608 P.2d 737, 743 n. 5 (Alaska 1980).

■ We now address the appropriate sanction for the state's failure to preserve the videotape. The state's good or bad faith in failing to preserve the videotape is relevant to determining the appropriate sanction. We look to the degree of culpability on the part of the state, the importance of the evidence lost, the prejudice suffered by the accused, and the evidence of guilt adduced at the trial or hearing. *Putnam,* 629 P.2d at 43–44; *State v. Contreras,* 674 P.2d 792, 821 (Alaska App. 1983).

We think an appropriate sanction in this case would be to remand the case back to the hearing officer with directions to presume that the videotape would have been favorable to Thorne.[12] This should be seri-

---

**10.** In this case, assuming that the videotape was destroyed by the police soon after the May 12, 1987 resolution of the criminal case against Thorne, the police would have had to preserve the videotape less than three weeks longer than they did to make it available at the civil hearing on June 1, 1987.

**11.** While the issue at the hearing was whether Officer Fritz had reasonable grounds at the time of arrest to believe that Thorne was driving while intoxicated, AS 28.25.166(j), this case is a perfect example of how a videotape taken one hour later is potentially relevant. Officer Fritz testified at the hearing that the videotaped per-

formance was "similar" to the performance in the field.

**12.** *See* concurrence of Judge Leventhal in *United States v. Bundy,* 472 F.2d 1266, 1268–69 (D.C. Cir.1972) (instruction to jury should indicate that, where officer's rough notes were not preserved, jury should be "free to infer that the missing original notes would have been different from the testimony at trial and would have been helpful to defendant"); *see also Harris v. State,* 678 P.2d 397, 413–14 (Alaska App.1984) (Singleton, J., dissenting); *People v. Hitch,* 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (1974); *Bryant,* 439 F.2d at 652–53.

ously considered by the hearing officer as he redetermines whether Officer Fritz had reasonable grounds to believe that Thorne was driving while intoxicated.

We thus hold that the state's failure to preserve a videotape of field sobriety tests taken one hour after arrest violates the due process rights of an accused at an administrative license revocation hearing where the accused is entitled to challenge whether the arresting officer had reasonable grounds at the time of arrest to believe that the suspect was driving while intoxicated. We remand for rehearing and consideration in light of the presumption that the videotape would have been favorable to Thorne.

### III.

Thorne also argues that the state's failure to preserve the videotape violated his right to confront and cross-examine the witnesses against him as secured by article I, section 11 of the Alaska Constitution.[13]

■ Thorne's reliance on Article I, section 11 of the Alaska Constitution overlooks the fact that the right is expressly limited to criminal trials. However, our cases and the statute in question establish, independently of Article I, section 11, Thorne's right to confront and cross-examine witnesses. *Whisenhunt, Barcott, Briggs, Champion,* and *Graham* are all premised upon an accused's right to a fundamentally fair and meaningful hearing

where one's driver's license is at stake. The right to confront and cross-examine witnesses is one right, founded upon due process and fundamental fairness, which civil defendants do enjoy.[14] The statute governing the conduct of the hearing also recognizes the accused's right to confront and cross-examine witnesses. Alaska Statute 28.15.166(h) provides for the mandatory presence of the arresting officer at the hearing if requested in writing or if required to resolve questions of fact.[15]

■ In the present case, however, Thorne's right to confront and cross-examine witnesses was not violated. Officer Fritz was present at the hearing and was subjected to vigorous cross-examination by Thorne's attorney. Thorne attempts to analogize the present situation to the failure to preserve a breathalyzer test ampoule while introducing the test results. This was held a denial of due process in *Lauderdale,* 548 P.2d at 381, since it denied the accused the right to "'cross-examine' the results of the test." The problem with Thorne's analogy is that in a drunk driving criminal prosecution the breathalyzer test results are introduced as proof of a critical element of the crime. Here, the contents of the videotape would be introduced to corroborate Thorne's version that he satisfactorily performed the field sobriety tests. Officer Fritz did not testify that the videotape showed that he had reasonable grounds to believe Thorne was driving

---

**13.** Article I, section 11 of the Alaska Constitution provides in relevant part that *"In all criminal prosecutions,* the accused shall have the right to ... be confronted with the witnesses against him ..." (emphasis added).

**14.** *See Jefferson v. Metropolitan Mortgage & Sec. Co. of Alaska,* 503 P.2d 1396, 1398 (Alaska 1972) ("It is a fundamental precept of common law that before testimony may sustain a cause of action it must be subject to cross-examination. The right of trial necessarily confers the right to confront and cross-examine adverse witnesses."); *Champion v. Department of Pub. Safety,* 721 P.2d 131, 133 (Alaska 1986) (to deny a driver a reasonable opportunity to test the reliability and credibility of evidence of central importance in the administrative license revocation proceeding is to deny "a meaningful and fundamentally fair hearing"); *Graham v. State,*

633 P.2d 211, 216 n. 12 (Alaska 1981) (meaningful hearing requires presence of arresting officer where grounds for officer's belief that person was operating vehicle while intoxicated is at issue).

**15.** AS 28.15.166(h) states in full:

The determination of the hearing officer may be based upon the sworn report of a law enforcement officer. The law enforcement officer need not be present at the hearing unless either the person requesting the hearing or the hearing officer requests in writing before the hearing that the officer be present. If in the course of the hearing it becomes apparent that the testimony of the law enforcement officer is necessary to enable the hearing officer to resolve disputed issues of fact, the hearing may be continued to allow the attendance of the law enforcement officer.

while intoxicated, and then refuse to produce the videotape. Rather, Officer Fritz described in detail the several factors leading to the formation of his suspicion (including the .10 percent breathalyzer test) and then admitted on cross-examination that, though he did not recall the results of the videotaped tests, they must have been similar since his report did not indicate any differences. The videotape was not a witness against Thorne.[16] Thorne's inability to cross-examine Officer Fritz by use of the videotape did not violate his rights under the Due Process Clause or Article I, section 11 of the Alaska Constitution.

## IV.

■ Thorne argues that the hearing officer was biased in favor of the police because he questioned the witnesses in an attempt "to discredit their testimony and bolster that of Officer Fritz" and made the following statement at the hearing:

And—and my reviewing of the evidence, I just don't believe that a police officer's going to arrest someone unless he genuinely believes the person's intoxicated. I mean it—it'd be—there'd be no purpose to arrest a person unless they did believe that they were intoxicated based on—on what they saw. For example, if an individual's not intoxicated and he arrests him, I mean what good is it going to do if they go to Wildwood Pretrial and the person blows .00 breath alcohol? And it serves no purpose. And—and I just don't believe that Officer Fritz would have arrested you unless he really believed, based on what he saw, that you were intoxicated.

Thorne argues that this quote from the hearing demonstrates (1) the hearing officer's bias, and (2) that the hearing officer incorrectly applied a subjective legal standard instead of the correct objective standard as required by AS 28.15.166(g).

A thorough review of the record indicates that the hearing officer did apply the correct legal standard. He explained the objective standard as stated in AS 28.25.-166(g):

[T]he issue at hand here [is] whether or not the officer had reasonable grounds to believe that Mr. Thorne was driving or operating while intoxicated. . . .

He applied that standard at the hearing:

As far as whether or not the officer had reasonable grounds to believe he was driving or operating while intoxicated, it would be my decision that, based upon the officer's testimony, that he did have reasonable grounds.

Finally, he explained how he arrived at his result:

The officer was very candid here, and he said based on the field sobriety tests he would have arrested him whether he blew .08, .09 or .10; that, in his opinion, based on the field sobriety tests that he observed, that Mr. Thorne was under the influence of alcohol.

Mr. Thorne acknowledges that he had consumed alcohol. The officer indicates that he smelled alcohol. He indicates that Mr. Thorne's balance was swaying and that his speech was slurred.

The record supports the hearing officer's findings, and the reasoning behind the decision comports with the applicable legal standard.

Thorne's allegations of bias are also unsupported by the record. The hearing officer questioned the witnesses in an attempt to get the full story. Thorne was represented by counsel who questioned Officer Fritz, Metz and Thorne in detail. No counsel represented the state. Thus, Thorne's favorable witnesses, consisting of himself and Metz, were not subject to cross-examination. The hearing officer was merely fulfilling that function in an effort both to fill in the gaps of the story and to measure the credibility of the witnesses.

16. *See Wright v. State,* 501 P.2d 1360 (Alaska 1972) (destruction of police officer's notes not reversible error where officer who made them testified at trial and was subject to cross examination); *cf. Lauderdale,* 548 P.2d at 382 n. 11 (destruction of breathalyzer ampoule, the "critical 'witness'" which established presumption of defendant's guilt, prevents cross-examination, requires reversal).

As for the hearing officer's above quoted statement, which Thorne argues demonstrates a bias in favor of police officers, we do not think it demonstrates either (1) a sufficient level of bias upon which to overturn the decision, or (2) that the hearing officer's personal bias in any way affected his decision.

REVERSED and REMANDED for further proceedings consistent with this opinion.