NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BENJAMIN S., | ) | |
| | ) | Supreme Court No. S-16338 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-13-01722 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STEPHENIE S., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1666 – February 7, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Benjamin S., pro se, Houston, Appellant. Stephenie S., pro se, Colorado Springs, Colorado, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

This appeal arises from a custody dispute following a divorce. The parties had joint legal custody of their younger son, with the mother having primary physical custody. While the younger son was visiting his father, the father moved for a custody hearing, alleging that the mother was abusive and that the son was deeply disturbed at the thought of returning to her after the visit. The mother responded with a motion alleging custodial interference. The court concluded that the father was not credible and

---

\*        Entered under Alaska Appellate Rule 214.

had not demonstrated a substantial change in circumstances. It denied the request for a hearing and ordered the father to return the child. Further proceedings were paused when the Office of Children's Services (OCS) became involved. The father appeals, arguing that the court was wrong to deny the request for a hearing and to judge his credibility based only on written filings. He also appeals several other of the court's decisions. We remand for a hearing on custody and affirm the superior court in all other respects.

## II.    FACTS AND PROCEEDINGS

Benjamin S. and Stephenie S. separated in June 2013.[1] After their separation Benjamin and Stephenie reached an agreement on the custody of their two minor children. The agreement provided for joint legal custody and divided physical custody, with Benjamin having primary physical custody of the older son in Alaska and Stephenie having primary physical custody of the younger son in Colorado. In November 2013 the superior court entered a custody order implementing the agreement and incorporating the parties' agreed parenting plan. A divorce trial was held in June 2015, and the divorce decree was entered in July.

Conflict between the parents continued after the divorce, and Benjamin was dissatisfied with the court's handling of the case.[2] In November 2015 Benjamin moved for primary physical custody of the younger son. He argued that a substantial change in circumstances had occurred because the son, now older and more mature, wanted and needed to live with his father and brother as male companions and role models, and because Stephenie had not paid for medical expenses as required by the parenting plan.

---

[1]    We use initials in lieu of the parties' last names to protect the family's privacy.

[2]    He filed motions seeking the recusal of the assigned judge in December 2015 and March 2016, both of which were denied.

Benjamin further alleged that Stephenie had emotionally abused him during and after their marriage. And he claimed that Stephenie used marijuana around the children and had permitted their older son to use tobacco, alcohol, and marijuana. Stephenie denied Benjamin's claims that she used drugs or alcohol, and alleged that Benjamin had a history of domestic violence against her and the children. The court denied the motion, concluding that Benjamin had not demonstrated a substantial change in circumstances justifying a modification hearing because his allegations were unsubstantiated and because the younger son had not "expresse[d] a clear preference to make a change in" custody.

In February 2016 Benjamin asked the court to appoint a guardian ad litem for the younger son because he and Stephenie were unable to resolve their differences. He argued that the boy needed a "dedicated advocate" and that a guardian ad litem would be "the most fair, efficient, and impartial advocate." Later that month he filed a "Motion for Correction/Expungement of Records" seeking to have "false allegations and defamatory comments" removed from the case file. The motion referred generally to Stephenie's claims that he had committed domestic violence.

The parties planned to have the younger son visit Benjamin for spring break in March 2016, but a dispute arose over Benjamin's communication of the flight itinerary. The parenting plan required the parent purchasing the tickets to "provide travel information" to the other parent at least ten days before the date of travel. Shortly before the younger son was scheduled to leave for Alaska Stephenie filed a motion claiming violation of her parental rights. She asserted that Benjamin had only texted her the departure flights and times but refused to give her the full itinerary or the son's arrival time back in Denver, telling her to get it from the airline. Benjamin's opposition argued that the parenting plan did not require him to provide a full itinerary for spring break

travel. Despite this dispute the visit began as planned, with the younger son's return to Colorado scheduled for March 27.

But on March 25 Benjamin filed an affidavit[3] notifying the court about an emergency visitation change. He said that his son refused to return to Colorado "because of the neglect and abuse he ha[d] endured" in his mother's custody and that he had threatened to harm himself if forced to return. On April 5 Benjamin filed an expedited "Motion for Interim Custody." Benjamin said that he had taken the younger son to the emergency room on March 26 because he was suicidal after talking to his mother. He reported that Stephenie had agreed to let the younger son remain in Alaska. He further stated that a "licensed . . . psychiatrist" had recommended that the younger son "not be compelled to return to an abusive and neglectful situation in his mother's care"[4] and that OCS was now involved. He filed medical records from the emergency room visit and from the psychiatric interview at which it was recommended that the younger son not return to his mother.[5] Benjamin also alleged that Stephenie had physically abused the younger son and repeatedly ignored his complaints of pain.

Stephenie did not file an opposition to Benjamin's motion for custody. Instead she filed a motion on April 19 alleging custodial interference because Benjamin had not returned their son to Colorado by April 9, the latest she had agreed to extend his visitation. She claimed that Benjamin had "premeditated" the decision to keep the younger son in Alaska, that an Alaska State Trooper and the District Attorney's office had instructed her to file the motion, and that a separate OCS report had been filed based

---

[3]     The affidavit indicated that he would submit a motion to modify custody.

[4]     The medical professional who made this recommendation was actually a nurse practitioner.

[5]     Benjamin was evidently in the room and participated in this interview.

on an altercation between Benjamin and their older son. Benjamin's response requested a hearing and asked for continued physical custody of the younger son "for his continued medical treatment needs and his emotional well-being and physical safety." Benjamin repeated his claims that Stephenie "neglect[ed] and abuse[d]" the younger son and argued that he had the right to make emergency decisions under the parenting plan. He also claimed that the younger son had missed his April 9 flight due to a second emergency room visit for suicidal thoughts and that Stephenie had refused contact for more than a week afterwards.[6]

The superior court granted expedited consideration of Stephenie's motion on custodial interference, and on May 2 issued an omnibus order that addressed both parents' custody motions and several of the other motions. The court construed Benjamin's motion for interim custody as requesting both a permanent custody modification and interim custody while the permanent custody motion was pending. But the court denied the motion in full because it "[did] not find [his] allegations to be credible." The court indicated that, although Benjamin claimed their son was suicidal, the medical report he attached stated that the younger son had "confessed . . . that he was not suicidal" and had only said he was to prevent Benjamin from forcing him to return to Colorado. The court specifically found that, based on its "experience with both parents in [the property division] trial and through the many motions that have been filed," Benjamin "often [made] allegations that [were] not supported by the evidence" and was "not an accurate reporter." It therefore concluded that Benjamin had not made

---

[6] Benjamin also filed two affidavits unattached to any motion, one attempting to "record [his] objections [to the expedited timeline] for the appellate record" and the other directing the court to an online video recording of the younger son addressing the court.

"an adequate showing of a substantial change in circumstances to justify" setting a custody modification hearing.

The court denied Stephenie's request for a finding that Benjamin had committed the crime of custodial interference, noting that she could pursue such a claim with the appropriate prosecuting authority. But it construed her motion "as also seeking the court's intervention to secure" their son's return to her custody. The court therefore issued a writ of assistance directing law enforcement to help her obtain custody of the younger son.

The court addressed other outstanding motions. It denied Benjamin's motion for appointment of a guardian ad litem, finding that Stephenie could "adequately address the best interests of the minor child." Benjamin's motion seeking the expungement of court records was also denied, on the ground that the facts did not justify application of the administrative rules he relied on. The court denied Stephenie's motion objecting to Benjamin's communication of the itinerary but ordered a specific procedure and contents for communicating travel information "to help the parties avoid future miscommunication about such issues." It also returned Benjamin's two unattached affidavits and explained that the Alaska Rules of Civil Procedure required affidavits to be filed in support of a motion. Benjamin's motion for reconsideration was denied.

Benjamin appeals several aspects of the omnibus order, including the denial of a hearing on custody, the court's refusal to "expunge[]" the record, and its return of the two affidavits. He also claims that his due process and other constitutional rights were violated and makes allegations of judicial bias.

Because the parties' briefing reported that the court and OCS had ongoing involvement with the family, we requested a status report from the superior court. Its July 2017 status report indicated that the OCS case had been dismissed a month after it was filed but that the court had since appointed a guardian ad litem. It reported that the

younger son "still reside[d] with his father" and had had "virtually no contact" with his mother since March 2016. It also indicated that Benjamin had filed two additional recusal motions, in August 2016 and February 2017, and that "the primary reason [it had] been unable to address" custody was Benjamin's multiple recusal motions. An updated status report indicated that a formal custody hearing had been scheduled.

## III. STANDARD OF REVIEW

"Whether a moving party has made a prima facie showing of changed circumstances warranting a hearing is a question of law that we review de novo."[7] "We will affirm the denial of a motion to modify custody without a hearing if, in our independent judgment, either (1) 'the facts alleged in the motion would not warrant a change in custody,' or (2) the 'allegations of changed circumstances are convincingly refuted by competent evidence' "[8] and the moving party subsequently "fails to indicate the ability to 'produce admissible evidence of specific facts rebutting that evidence.' "[9]

## IV. DISCUSSION

### A. It Was Error Not To Hold A Hearing On Benjamin's Motion For Interim Custody.

A parent seeking custody modification is entitled to an evidentiary hearing if the parent's "allegations, taken as true, demonstrate a significant or substantial change in circumstances relative to the circumstances that existed at the time of the prior custody

---

[7] *Yvonne S. v. Wesley H.*, 245 P.3d 430, 432 (Alaska 2011) (citing *Barile v. Barile*, 179 P.3d 944, 946 (Alaska 2008); *Maxwell v. Maxwell*, 37 P.3d 424, 425 (Alaska 2001)).

[8] *Id.* (footnotes omitted) (quoting *Iverson v. Griffith*, 180 P.3d 943, 946 (Alaska 2008)).

[9] *Id.* (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 382 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1084-85 (Alaska 2004)).

order, and . . . those allegations, if true, would warrant a change in custody."[10] The superior court denied Benjamin's modification motion without holding an evidentiary hearing.

Benjamin argues that he was entitled to a hearing because his motion alleged sufficient evidence of changed circumstances. In particular, he argues that his allegations of domestic violence on Stephenie's part entitled him to a hearing because a finding of domestic violence is sufficient to establish a change in circumstances under AS 25.20.110(c).[11] He also argues that the court erred in its treatment of his domestic violence allegations, both because it did not inquire into them[12] and because it decided he was not credible.

Benjamin's motion contained a number of allegations that Stephenie had seriously mistreated their son. Benjamin asserted that Stephenie had emotionally and physically abused the younger son both during the marriage and after they moved to Colorado, such as by hitting him while he was asleep. He said that Stephenie used drugs and forced the younger son to take sleeping medications. He also claimed that Stephenie ignored the younger son when he suffered dental pain and when he told her that he had suicidal thoughts.

---

[10] *Id.*

[11] "In a proceeding involving the modification of an award for custody of a child or visitation with a child, a finding that a crime involving domestic violence has occurred since the last custody or visitation determination is a finding of change of circumstances . . . ." AS 25.20.110(c).

[12] *See Parks v. Parks*, 214 P.3d 295, 302 (Alaska 2009) (holding trial court should have inquired into self-represented party's allegations of domestic violence because court was required to consider evidence of domestic violence in deciding custody under AS 25.24.150(g)).

The motion also asserted that the younger son had been taken to the emergency room "for feelings of suicide," that OCS and the Alaska State Troopers had been contacted based on his interview with the emergency room doctor, and that a psychiatrist had recommended not returning him to his mother. Benjamin submitted supporting documentation, including reports from the younger son's emergency room visit and subsequent psychiatric interview with a nurse practitioner.[13] Stephenie did not directly respond to Benjamin's motion, and her motion claiming custodial interference did not address the allegations.[14]

The superior court denied the motion. Its primary rationale was its finding that Benjamin was not credible. The court pointed out what it saw as a discrepancy between the medical report and Benjamin's description of the younger son's situation. It also referred to the lack of evidence that the younger son desired a change in custody or was mature enough "to express a justifiable desire" for it.

Benjamin argues that it was improper for the court to deny a hearing based on a credibility determination made only on affidavits. In *Collier v. Harris* we addressed whether it was appropriate for a superior court, in deciding whether to grant a hearing on a motion to modify custody, to make credibility determinations based only on affidavits.[15] There, the mother sought to modify both legal and physical custody 18

---

[13]    The interview record reported that the younger son described a number of instances of abuse and said he would harm himself or commit suicide if returned to his mother's home but would be happy to live with his father in Alaska.

[14]    Stephenie does dispute that the younger son previously told her that he was having suicidal thoughts. Additionally, her response to Benjamin's November 2015 motion for custody denied some of the same allegations and claimed that Benjamin had abused her and the children.

[15]    261 P.3d 397, 403-05 (Alaska 2011).

months after the parties agreed on physical custody and three months after a two-day trial deciding legal custody.[16]  Although we separately concluded that the mother had not made a sufficient prima facie showing to justify a hearing,[17] we held that the superior court erred when it based its decision in part on a finding that "the affidavits of [the father were] credible."[18]  We noted that "the parties' affidavits contained directly conflicting information" and that "the court had never decided physical custody in a contested setting"; it had only once heard testimony from the mother, at the two-day legal custody trial, and had never heard testimony from either parent about physical custody.[19]  We held that under such circumstances "the superior court's credibility determinations were premature."[20]

Here, the court had only heard testimony from the parents at the property division trial, ten months before Benjamin's motion to modify custody.  It had never heard testimony from either parent regarding custody.  And Stephenie did not reply to Benjamin's motion with an affidavit or evidence disputing his explanation of events, even though her motion alleging custodial interference and her response to his previous affidavit clearly indicated that she saw the facts differently.

We acknowledged in *Collier* that "[t]here may be circumstances where a party's repetitious use of the judicial system over a short time period without new allegations would allow a trial court to make a credibility determination on written

---

[16]     *Id.* at 401, 403.

[17]     *Id.* at 408-09.

[18]     *Id.* at 404.

[19]     *Id.* at 405.

[20]     *Id.*

filings."[21] Benjamin had certainly made "repetitious use of the judicial system" with his numerous and voluminous filings. But like the mother in *Collier*, this was only Benjamin's second motion to modify custody.[22] And the motion at issue did make serious new allegations about the younger son's mental state and fear of returning to his mother in Colorado.

The facts Benjamin alleged could, if true, warrant a change in custody, and Stephenie did not introduce any evidence to refute them. We therefore conclude that it was error not to hold a hearing on Benjamin's motion based on his allegations of domestic violence in Stephenie's home and his reports of their son's psychological distress. However, it is not clear what effect the denial of the hearing had on the case. The superior court's July 2017 status report indicated that Benjamin's voluminous filings, often on the eve of scheduled hearings, and his repeated accusations of bias and motions for recusal, have prevented the court from taking action in the 15 months since his appeal was filed. The court has been unable to hold a custody hearing or to take any action to enforce its May 2, 2016 order requiring the younger son's immediate return to his mother.[23]

The best interests of the child require that his custody be settled. Because the superior court did not hold a hearing before denying Benjamin's motion for interim custody, we remand this case for the court to address this issue.

## B. Benjamin's Due Process Rights Were Not Violated.

Benjamin argues that his constitutional rights were violated in several

---

[21]     *Id.* at 404-05.

[22]     *Id.* at 405 ("Filing a second motion to modify does not constitute repetitious use of the judicial system such that [the mother] should be denied her day in court.").

[23]     The report notes that "[the younger son] still resides with his father."

respects.[24] He first argues that the court violated his rights when it granted expedited consideration of Stephenie's motion alleging custodial interference and required him to respond to her motion within three days. He argues that because he is "a disabled pro se litigant," he was prejudiced by the expedited consideration of a motion focused upon his son's custody. But Benjamin does not explain what rights may have been violated, and there is no evidence that he was prejudiced;[25] he timely filed a lengthy response accompanied by multiple attachments.

Benjamin next argues that his right to confront and cross-examine witnesses was denied. He cites *Thorne v. Department of Public Safety, State of Alaska*,[26] a case that established that an individual facing administrative revocation of a driver's license had "an important property interest" protected under the Alaska Constitution's due process clause,[27] and had a right to confront and cross-examine witnesses against him.[28] Benjamin was not deprived of any property interest, nor does he face a civil penalty imposed by the State. *Thorne* does not apply.[29]

---

[24]     Whether a state action violates the state or federal constitution is a question of law to which we apply our independent judgment. *Carvalho v. Carvalho*, 838 P.2d 259, 261 n.4 (Alaska 1992) (citing *Prop. Owners Ass'n of the Highland Subdivision v. City of Ketchikan*, 781 P.2d 567, 571 (Alaska 1989)).

[25]     Benjamin does assert that he was unable to obtain OCS documents due to the short time frame but does not explain how this lack of documentation prejudiced him.

[26]     774 P.2d 1326 (Alaska 1989).

[27]     *Id.* at 1329 (quoting *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981)).

[28]     *Id.* at 1332 (citing *Jefferson v. Metro. Mortg. & Sec. Co. of Alaska*, 503 P.2d 1396, 1398 (Alaska 1972)).

[29]     Benjamin also argues that his right to present testimony and evidence under Article I, section 11 of the Alaska Constitution was denied and that he had a right to an
(continued...)

Benjamin also argues that his parental due process rights were violated. He appears to argue that, based upon federal cases recognizing parents' right to "bring up children"[30] and their "fundamental liberty interest . . . in the care, custody, and management of their child,"[31] he is authorized as "a protective parent" to decide "emergency custody matters for his children." But these constitutional rights do not give Benjamin the authority to make unilateral decisions about his children. Regardless, Benjamin's briefing is not sufficient to allow us to discern a legal argument, so the issue is waived.[32]

## C.    The Superior Court Did Not Improperly Modify The Parenting Plan.

Benjamin argues that the superior court improperly modified the parties' parenting plan. The parenting plan required the parent purchasing a plane ticket to "provide travel information" to the other parent at least ten days before the date of

---

[29]    (...continued)
attorney under the Sixth Amendment to the United States Constitution and *Gideon v. Wainwright*, 372 U.S. 335 (1963). These constitutional provisions expressly apply to criminal defendants and are not relevant here. *See Gideon*, 372 U.S. at 344 (recognizing as "fundamental" the "right of one charged with a crime to counsel"); *Thorne*, 774 P.2d at 1332 (noting that the right established by Article I, section 11 of the Alaska Constitution "is expressly limited to criminal trials").

[30]    *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

[31]    *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

[32]    *See Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) ("[T]o avoid waiver, a [self-represented] litigant's briefing must allow his or her opponent and this court to discern [his] legal argument. Even a [self-represented] litigant . . . must cite authority and provide a legal theory." (quoting *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005))).

travel.[33]  Stephenie filed her motion alleging violation of her parental rights when Benjamin notified her of their son's travel plans via a text message containing only flight numbers and departure times.[34]  The superior court noted that the parenting plan was "not specific about how travel itinerary information is to be exchanged."  It therefore set specific requirements for the future and required the parent purchasing a ticket to send the full itinerary to the other parent by both email and text message.  Benjamin argues that the order modified the parenting plan by requiring him to email Stephenie.  He asserts that he was justified in refusing to email her because of her allegedly "stalking and harassing behavior."[35]

The superior court's order clarified the parenting plan but did not modify it.[36]  Because the parenting plan did not specify a method for communicating travel information and the parents were so unable to agree that they resorted to the court, the court detailed the exact contents, method, and timeline of exchange "to help the parties avoid future miscommunication about such issues."  The court did not exceed its

---

[33]  The ten day notification requirement is only explicitly included under the summer vacation travel provision.  But neither party contested the more general application of the notice requirement.

[34]  She said she was unable to get his full itinerary or arrival information from the airline.

[35]  He does not object to the requirement for travel plans to be communicated 20 days prior to travel rather than 10.

[36]  Because we conclude that the court did not modify the plan, we do not address Benjamin's claim that a sua sponte modification was improper under the terms of the parenting plan.  Benjamin's additional claim that Stephenie's motion was improperly served is waived for inadequate briefing; he does not explain how service was deficient. *See Wright*, 390 P.3d at 1169 (quoting *Casciola*, 120 P.3d at 1063).

authority in doing so.[37]

**D.    The Superior Court Did Not Abuse Its Discretion In Refusing To "Expunge" Records.**

Benjamin filed a "Motion for Correction/Expungement of Records" complaining that Stephenie defamed him by her allegations of domestic violence. The motion requested the removal of all such allegations from the case file under Alaska Administrative Rules 37.5 through 37.8 and 40.[38] He argues on appeal that he had a right to have those allegations removed from the court record under Alaska Administrative Rule 37.6, which provides for courts to "limit access to public information in an individual case record."[39]

Parties are entitled and expected to be adverse in litigation, and litigants do not have a right to have claims or statements with which they disagree removed from the record. The superior court rightly explained to Benjamin that Administrative Rule

---

[37]    Benjamin also argues that his procedural due process rights were violated because he was not granted notice and an opportunity for a hearing on the alleged modification of the parties' parenting plan. As discussed, the parenting plan was not modified; even so, Benjamin does not explain what "life, liberty, or property" he was deprived of without due process. *See Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974). Benjamin cites *Cushing v. Painter* but that case concerned a permanent custody determination and does not apply here. 666 P.2d 1044, 1046 (Alaska 1983). Benjamin has not shown that any violation occurred.

[38]    *See* Alaska Admin. R. 37.5-.8 (governing public access to court records); Alaska Admin. R. 40 (governing the public index of parties in all filed cases).

[39]    Alaska Admin. R. 37.6(a). Benjamin refers to two statutes addressing confidentiality or sealing of records in criminal proceedings (AS 22.35.030 and AS 12.62.180). Neither applies to this civil proceeding. He also argues that his privacy rights under Article I, section 22 of the Alaska Constitution were violated, but he did not raise that issue with the superior court so the argument is not preserved for appeal. *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 225 (Alaska 2014) (quoting *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997)).

37.6(b) was not intended to "assuage the emotional distress that a domestic relations litigant in a high conflict case might experience." It also noted Benjamin's failure to specify how he would be harmed or even what specific allegations would cause such harm.[40]

"In determining whether to limit access to a case file under Alaska Administrative Rule 37.6, trial courts must weigh the public interest in disclosure against any legitimate interest in confidentiality. We generally review such decisions for abuse of discretion."[41] It is an abuse of discretion "when the decision on review is manifestly unreasonable."[42] Given Benjamin's lack of specificity as to the potential harm, it was not an abuse of discretion for the court to deny Benjamin's motion.

E.    **The Superior Court Properly Rejected Affidavits That Were Filed Without A Motion.**

Benjamin argues that the superior court "improperly" returned two affidavits he filed in April 2016 because they would have supported his request for a custody hearing. The superior court properly returned them because they did not comply with Alaska's Rules of Civil Procedure.

Alaska Civil Rule 77 governs the filing of motions and other documents

---

[40]    We note that, in contrast to Benjamin's protestations about the importance of his own privacy, he filed confidential information from his son's Child in Need of Aid proceedings in this public case. *See* CINA Rule 22(a) ("The records of a child in need of aid proceeding are confidential. Only parties and their attorneys may have access to the court file except as otherwise authorized by statute or court order for good cause shown. Parties and their attorneys shall maintain the confidentiality of all information in the court's file.").

[41]    *Timothy W. v. Julia M.*, ___ P.3d ___, Op. No. 7196 at 6, 2017 WL 3662468, at *3 (Alaska Aug. 25, 2017) (citations omitted).

[42]    *Id.*

with the court. It provides for affidavits to be filed in support of motions or oppositions to motions and does not allow for affidavits to be filed by themselves.[43] The superior court explained to Benjamin that it was returning the affidavits without considering them because they "were not tied to a motion, and the Rules of Civil Procedure do not permit a party to file affidavits without a motion for which the affidavits provide support." It also noted that a litigant was not allowed to "repeatedly supplement" an earlier motion with additional affidavits.

We hold self-represented litigants' pleadings "to a less stringent standard than those of lawyers, 'particularly where "lack of familiarity with the rules" . . . underlies litigants' errors.' "[44] The superior court therefore was required to inform Benjamin of the relevant rules and how to comply with them,[45] which it did when it explained that affidavits must accompany a motion. It was not an abuse of discretion to return the affidavits.

F.    **The Superior Court Was Not Biased Against Benjamin.**

Benjamin did not list bias as an issue on his Statement of Points on Appeal or in his brief in this appeal, but in his brief he repeatedly claims that the court acted intentionally to support Stephenie and to harm him. " 'In order to prove a claim of judicial bias,' a party must show that the judge 'formed an opinion of him from

---

[43]    Alaska R. Civ. P. 77(b)(1), (c)(1)(I), (g)(3), (I).

[44]    *Wagner v. Wagner*, 299 P.3d 170, 174 (Alaska 2013) (quoting *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002)).

[45]    *Id.* ("The superior court has a duty to 'inform a [self-represented] litigant of the proper procedure for the action he or she is obviously attempting to accomplish'. . . ." (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987))).

extrajudicial sources.' "[46]

The superior court's July 2017 status report to this court indicates that Benjamin has now filed four recusal motions in this case; all of them have been denied, and each denial was affirmed by an independent judge on review. The timing of the most recent of these motions, which he filed the Friday before a scheduled Monday custody hearing, suggests that he may have filed it less because he believes that the court is actually biased than to prevent the hearing from proceeding.

Because he has made no showing that the judge overseeing this case has relied upon any extrajudicial source, and because all of the judges who have reviewed the court's decisions to not recuse itself have agreed that there is no bias, we find no merit to Benjamin's claims.

## V.    CONCLUSION

We REMAND the issue of custody and AFFIRM the superior court's order in all other respects.

---

[46]    *Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012) (quoting *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004)). "[J]udicial bias should not be inferred merely from adverse rulings," *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015) (quoting *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011)), and even incorrect adverse rulings are not in themselves proof of bias, *Greenway v. Heathcott*, 294 P.3d 1056, 1063 (Alaska 2013) (citing *Jourdan v. Nationsbanc Mortg. Corp.*, 42 P.3d 1072, 1082 (Alaska 2002)).

# In the Supreme Court of the State of Alaska

Benjamin S.,                    )
                                )       Supreme Court No. S-16338
            Appellant,          )
                                )
    v.                          )              **Order**
                                )       Petition for Rehearing
Stephenie S.,                   )
                                )       Date of Order: February 7, 2018
            Appellee.           )
                                )
_____)
Superior Court No. 3PA-13-01722 CI

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

On consideration of the Petition for Rehearing filed on November 27, 2017,

IT IS ORDERED:

1.      Appellant's Petition for Rehearing is GRANTED IN PART for the limited purpose of correcting the original Memorandum Opinion & Judgment with the change noted below.

2.      Memorandum Opinion & Judgment 1654, issued on November 15, 2017, is WITHDRAWN.

3.      Memorandum Opinion & Judgment 1666 is issued in its place today. There is one change at page 11:

*The original paragraph stating:*

> The best interests of the child require that his custody be settled. Because the superior court did not hold a hearing before denying Benjamin's motion for interim custody, and because Benjamin remains in violation of the court's May 2, 2016 order to return the boy to his mother, we remand this case for the court to address both of these issues.

*has been replaced with the paragraph that follows:*

   The best interests of the child require that his custody be settled. Because the superior court did not hold a hearing before denying Benjamin's motion for interim custody, we remand this case for the court to address this issue.

   Entered by direction of the court.

             Clerk of the Appellate Courts

               /s/

             _____

             Marilyn May

cc:  Supreme Court Justices
   Judge Vanessa White
   Trial Court Appeals Clerk
   Publishers

Distribution:

Benjamin S.
P.O. Box 940266
Houston AK 99694

Stephanie K.
5935 Vista Ridge # 205
Colorado Springs Co 80918